IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENO EFFIONG NKANGA, | ) | |
| ID # 1372194, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:15-CV-451-G (BH) |
| | ) | |
| LORIE DAVIS,[1] Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions,

and recommendation.  Based on the relevant findings and applicable law, the petition for writ of

habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

I.  BACKGROUND

Eno Effiong Nkanga (Petitioner) challenges his conviction for capital murder in Cause No.

F05-01415.  The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

A.     State Proceedings

On October 18, 2005, the State indicted Petitioner for capital murder.  (Doc. 12-7 at 4.)[2]  He

pleaded not guilty and was tried before a jury in Criminal District Court No. 2 of Dallas County,

Texas, on April 3-7, 2006.  (Doc. 12-14 at 1.)

The evidence at trial was summarized by the state appellate court as follows:

The deceased's [Darryl Anthony's] body was found dumped under a bridge.  He had

---

[1]  Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2]  Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

been shot at such close range that his skull no longer contained his eyes or his brain. Huey Kennedy, a confidential narcotics informant, told police he had information about a murder where the body had been dumped under a bridge. Kennedy had been convicted of a federal "[d]rugs and guns" offense and was working with officers to try to decrease his sentence. He had learned of the murder through his cousin, Anthony Haywood. Haywood testified he had learned of the murder from an associate of his named "Len."

Kennedy and Haywood had gone to a duplex on Forney Road where the murder had occurred. Haywood stated, "You could tell someone had been shot there." There they saw appellant and Leonard Allen attempting to clean up the evidence of the murder. According to Kennedy, appellant told him at that time that he had shot a "guy" in the back with an old 12-gauge shotgun, and when the guy turned around, he shot him in the head and "brain fragments flew everywhere on another guy that was there." Haywood testified that appellant later told him he had shot the deceased with a 12-gauge shotgun. When a crime scene detective went to the duplex, he found blood, brain matter, and bone fragments there. The officer also found a shot cup, a couple of live shotgun shells, and an empty box of 12-gauge ammunition. DNA found on the shotgun shot cup was linked to the deceased. A 12-gauge shot cup was also found inside the deceased's body. DNA evidence from cigarette butts collected at the duplex where the murder occurred were linked with appellant.

George Hubbard testified that he was with Jerry Matatall on the other side of the duplex when he heard arguing about money, plus kicking, slapping, and moaning. Matatall, too, recalled hearing a "ruckus." At one point, the deceased knocked on the door begging the men to help him, but Hubbard refused to let him in. Hubbard remembered the deceased looking "scared." Hubbard and Matatall watched as appellant and another "boy" dragged the deceased away from Hubbard's door. Later, both Hubbard and Matatall heard two to three gunshots next door. Hubbard had identified appellant in a photographic lineup as one of the men who dragged the deceased away from his door, but he was not able to identify appellant at trial. Matatall identified appellant at trial but was unable to identify him in a lineup.

After police linked the deceased's body with the murder reported by Kennedy, they received information that appellant could be found at a particular apartment. The officers could smell marijuana in the apartment. An officer knocked on the door again, and when appellant answered the door, the officer prevented appellant from closing the door by blocking it with his foot. The officers saw marijuana inside the apartment at that time. When backup officers arrived at the scene minutes later, they entered the apartment and found marijuana and crack cocaine in plain view. They arrested appellant. Also inside the apartment they found an empty box of 12-gauge shotgun shells and prescription bottles with the deceased's name on them.

*Nkanga v. State*, No. 05-06-00551-CR, 2008 WL 367650, at *1 (Tex. App. – Dallas Feb. 12, 2008).

2

The jury convicted Petitioner, and the trial court sentenced him to life imprisonment. (Doc. 12-11 at 7.) The judgment was affirmed on appeal. *Nkanga*, 2008 WL 367650. The Texas Court of Criminal Appeals refused the petition for discretionary review. *Nkanga v. State*, PD-0328-08 (Tex. Crim. App. Aug. 20, 2008).

Petitioner's state habeas application, signed on June 17, 2009, was received by the state court on June 30, 2009. (Doc. 14-15 at 5, 15.) The application was denied without written order on the findings of the trial court without a hearing. (Doc. 14-13); *see Ex parte Nkanga*, WR-82,060-01 (Tex. Crim. App. Oct. 1, 2014).

**B.**      **Substantive Claims**

Petitioner's habeas petition, received on February 10, 2015, raises the following grounds:

(1) There was no evidence, factually insufficient evidence, and legally insufficient evidence to support the conviction;

(2) He was denied due process and due course of law;

(3) Trial counsel was ineffective for failing to:

>   (a) object to fabricated testimony and perjury;
>
>   (b) conduct an adequate pretrial investigation;
>
>   (c) consult with him to establish a defense;
>
>   (d) object to DNA evidence;
>
>   (e) object to the prosecutor's vindictive and biased prosecution;
>
>   (f) connect the perjured testimony of the witnesses to the criminal charges they were facing;
>
>   (g) adequately cross-examine the witnesses about how they gained knowledge of the facts of the crime;
>
>   (h) protect his right of allocution;

(i)  have DNA testing done;

(4)  The trial court erred in denying his motion to suppress evidence.

(Doc. 3 at 8, 10, 12-13, 15.)  Respondent filed a response on July 10, 2015.  (Doc. 15.)  Petitioner

filed a reply on October 15, 2015.  (Doc. 20.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to

procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established

federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. SUFFICIENCY OF THE EVIDENCE

Petitioner asserts that there was no evidence, legally insufficient evidence, and factually insufficient evidence to support the conviction. He contends that the evidence was insufficient to prove that the murder was in the course of committing or attempting to commit robbery or

5

kidnapping. (Doc. 3 at 8, 9, 12, 14.) In his reply, he also contends that the evidence was insufficient

to prove that he committed murder. (Doc. 20 at 6-7.)

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency

of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979).[3]  In *Jackson*, the

Supreme Court held that the correct standard of review when a state prisoner challenges the

sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Id.* at 320.  Moreover, the trier of

fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing

reasonable inferences from basic facts to ultimate facts. *Id.*  Under *Jackson*, "the assessment of the

credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330

(1995).  "Determining the weight and credibility of the evidence is within the sole province of the

jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view "any required

credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*,

221 F.3d 140, 154 (5th Cir. 2000).  They do not "second-guess[ ] the weight or credibility given the

evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

To find Petitioner guilty of capital murder, the jury had to believe beyond a reasonable doubt

that he murdered Darryl Anthony in the course of committing or attempting to commit robbery or

kidnapping. *Nkanga*, 2008 WL 367650 at 2; (*see* doc. 12-10 at 3) (jury instructions); Tex. Penal

---

[3]  To the extent Petitioner claims that the evidence is factually insufficient to support his conviction, this claim is not
cognizable in a federal habeas action. *See Spencer v. Dretke*, No. 3:02–CV–1988–D, 2005 WL 696719, at *4 n. 2 (N.D.
Tex. Mar. 23, 2005), *rec. accepted*, 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).  A claim that "no evidence" supports
a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F.3d 257,
266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence),
vacated on other grounds, 541 U.S. 386 (2004); *United States v. Jackson*, 86 F. App'x 722, 722 (5th Cir. 2004) (per
curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence").

Code § 19.03(a)(2) (capital murder is murder in the course of committing or attempting to commit robbery or kidnapping).

## A.      Murder

Petitioner argues that the contradictory and conflicting testimony of Haywood and Kennedy did not prove he committed the murder.  The state appellate court held that the evidence was sufficient to support the conviction.  *Nkanga*, 2008 WL 367650 at 3.

Credibility determinations are made by the jury, and courts view those determinations in the light most favorable to the verdict.  *See Martinez*, 975 F.2d at 161; *Wise*, 221 F.3d at 154.

Here, Petitioner admitted he shot someone in the back and in the head with a 12-gauge shotgun.  (Doc. 13-1 at 7-p. 137.)  He and Leonard Allen attempted to clean up blood in the duplex.  (Doc. 12-19 at 4-pp. 66, 68).  In the duplex, police found blood, human tissue, bone fragments, and shotgun ammunition, and Petitioner's and Anthony's DNA.  (Doc. 12-20 at 5-pp. 99-100, 6-pp. 102-04; doc. 13-5 at 101-02.)  Petitioner was identified by one witness at trial, and by another witness in a photo line-up, as one of the men who dragged Anthony to the duplex shortly before gunshots were heard.  (Doc. 13-2 at 6-p. 160; doc. 13-3 at 5-pp. 182-83; doc. 13-4 at 1-p. 196; doc. 13-5 at 153-55.)  His body was found under a bridge.  (Doc. 12-18 at 3-p. 36-37.)  He had shotgun wounds from close range, one in the back and one in the head.  (Doc. 13-5 at 140-41, 144, 149.)

The jury could have rationally determined that Petitioner murdered Anthony.  He has not shown that the state court unreasonably determined that the evidence was sufficient to support his conviction.

## B.      Kidnapping

Under Texas law, a person commits kidnapping if "he intentionally or knowingly abducts

7

another person." Tex. Penal Code § 20.03(a).  "'Abduct' means to restrain a person with intent to prevent his liberation by (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." *Id*. § 20.01(2).  "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id*. § 20.01(1).

George Hubbard, who was in the other side of the duplex, heard noise from next door.  (Doc. 13-3 at 2-p. 173.)  He heard slapping and kicking.  (*Id*. at 3-p. 176.)  Petitioner and another man were yelling at Anthony about money owed.  (*Id*. at 3-p. 174.)  One of the men told Anthony to give him the money.  (*Id*. at 3-p. 176.)  Anthony looked scared when he knocked on Hubbard's door and asked for help, but Hubbard did not let him in.  (*Id*. at 3-p. 177; 4-p. 178.)  Petitioner and another man ran to Anthony, grabbed him, and dragged him away.  (*Id*. at 4-p. 179, 5-p. 182-83.)  Hubbard heard wrestling noises against the next door wall and more yelling about money.  (*Id*. at 5-p. 185.)  Then he heard two or three shots.  (*Id*.)

The jury could have rationally determined that Petitioner kidnapped Anthony by grabbing him and dragging him back to the duplex and keeping him there, while threatening him with deadly force in the duplex, based on the fact that Petitioner had a shotgun that he eventually used to shoot Anthony.  Petitioner has not shown that the state court unreasonably determined that the evidence was sufficient to support his conviction.

## C.    **Robbery**

Under Texas law, a person commits robbery if, "in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or places another in fear of

imminent bodily injury or death." Tex. Penal Code § 29.02(a). "'In the course of committing theft'

means conduct that occurs in an attempt to commit, during the commission, or in immediate flight

after the attempt or commission of theft." Tex. Penal Code § 29.01(1).

As discussed, Petitioner and another man slapped and kicked Anthony while yelling at him

about money owed, and one of them told Anthony to give him the money. The jury could have

reasonably concluded that Petitioner and another were robbing or attempting to rob Anthony of

money, and that the murder was in the course of robbery or attempted robbery. Petitioner has not

shown that the state court unreasonably determined that the evidence was sufficient to support his

conviction.[4]

## IV. DUE PROCESS

Petitioner contends he was denied due process and due course of law by the knowing use of

perjured testimony, *Brady* violations, constitutional trial errors, and a Fifth Amendment violation.

(Doc. 3 at 10.) To the extent he seeks to raise a claim of denial of due course of law under the due

course of law provisions of the Texas Constitution, *see* Tex. Const. art. 1, §§ 13, 19, a claim under

the Texas Constitution is not cognizable on federal habeas review. *See Hall v. Thaler*, 390 F. App'x

404, 406 (5th Cir. 2010).

## A.      Alleged Perjured Testimony

Petitioner contends that the State knowingly used perjured testimony of Huey Kennedy and

Anthony Haywood.

---

[4] Petitioner argues that there was insufficient evidence to prove that he robbed Anthony of prescription medicine.
Although Anthony's medicine bottles were found in the apartment in which Petitioner arrested, he contends that Anthony
had been staying at the apartment and sold drugs there. (Doc. 3 at 9.) It is not necessary to decide whether there was
sufficient evidence to prove that Petitioner committed the murder in the course of taking Anthony's medicine bottles.
First, there was sufficient evidence to prove that he attempted to rob Anthony of money. Second, as discussed, there
was sufficient evidence to prove that he kidnapped Anthony.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) it was material. *Napue*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

Petitioner has failed to establish that the testimony was false or that the prosecutor knew it was false. Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements or testimony of other witnesses do not establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). Conflicting testimony is to be resolved by the jury. *See Koch*, 907 F.2d at 531.

Petitioner has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts.

B.      ***Brady* Claim**

Petitioner contends there were *Brady* violations. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. "Brady claims

involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.' " *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

Petitioner does not allege any facts to support this claim or point to any exculpatory material that was withheld by the State. His conclusory claim does not show he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

### C.    **Alleged Constitutional Trial Errors**

Petitioner generally contends there constitutional trial errors. To the extent he raises this claim separately from his other claims, he does not allege any facts to support it. His conclusory claim does not show he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

### D.    **Alleged Fifth Amendment Violation**

Petitioner contends there was a Fifth Amendment violation, but he does not allege any facts to support this claim. His conclusory claim does not show he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends trial counsel was ineffective for failing to object to fabricated testimony and perjury; conduct an adequate pretrial investigation; consult with him to establish a defense;

object to DNA evidence; object to the prosecutor's vindictive and biased prosecution; connect the

perjured testimony of the witnesses to the criminal charges they were facing; adequately cross-

examine the witnesses about how they gained knowledge of the facts of the crime; protect his right

of allocution; and have DNA testing done.  (Doc. 3 at 12, 13.)

Petitioner raised these claims in his state habeas application without any factual allegations

in support.  (Doc. 14-15 at 38.)  The state habeas court denied the claims because he did not provide

any evidence in support, and therefore did not meet his burden of demonstrating that he received

ineffective assistance of counsel.  (*Id*. at 53-55.)

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for

his defense."  U.S. Const. amend. VI.  The Sixth Amendment guarantees a criminal defendant the

effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668

(1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective

assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2)

that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668,

687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's

performance was constitutionally effective.  *See Strickland*, 466 U.S. at 696.  The Court may address

the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."

*Strickland*, 466 U.S. at 689.  To establish prejudice, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.   A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694.  A petitioner must "affirmatively prove prejudice." *Id.* at

693.  The prejudice component "focuses on the question whether counsel's deficient performance

renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*,

529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts

must consider the totality of the evidence before the finder of fact in assessing whether the result

would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-

96.   One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.

*Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient

to obtain federal habeas relief.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989);

*United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*,

200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of

counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.    **Perjury**

Petitioner contends that counsel failed to object to fabricated testimony and perjury.  As

discussed, he has not shown that the witnesses' testimony was perjured.  He does not allege any

meritorious objection that counsel could have made.  The alleged contradictions and inconsistencies

of the testimony of Haywood and Kennedy were matters that were brought out by counsel on cross-

examination.  He has not shown deficient performance or prejudice, and he has not shown that the

state court's rejection of this claim was unreasonable.

## B.    **Pretrial Investigation**

Petitioner contends that counsel did not adequately investigate this case, but he does not

allege facts to support this claim or point to evidence that counsel should have discovered.  His

conclusory claim does not show that he is entitled to relief.  *See Woods*, 870 F.2d at 288 n.3.

**C.      Consultation**

Petitioner contends that counsel failed to consult with him to establish a defense, but he does

not allege any facts to support this claim.  He does not allege the extent to which they consulted, or

any defense that counsel could have raised as a result of any additional consultation.  His conclusory

claim does not show that he is entitled to relief.  *See Woods*, 870 F.2d at 288 n.3.

**D.      DNA Evidence**

Petitioner asserts that counsel failed to object to DNA evidence.  He does not allege any facts

to support this claim or any meritorious objection that counsel should have made.  His conclusory

claim does not show that he is entitled to relief.  *See Woods*, 870 F.2d at 288 n.3.

**E.      Alleged Vindictive and Biased Prosecution**

Petitioner claims that counsel failed to object to the prosecutor's vindictive and biased

prosecution but he does not allege any facts to support this claim.  He does not allege how the

prosecution was vindictive and biased or any meritorious objection that counsel should have made.

His conclusory claim does not show that he is entitled to relief.  *See Woods*, 870 F.2d at 288 n.3.

**F.      Connection of Witnesses' Testimony to Their Criminal Charges**

Petitioner contends that counsel failed to connect the perjured testimony of the witnesses to

the criminal charges they were facing.  He does not allege facts to support this claim.  His

conclusory claim does not show that he is entitled to relief.  *See Woods*, 870 F.2d at 288 n.3.

**G.      Cross-examination of Witnesses**

Petitioner asserts that counsel did not adequately cross-examine the witnesses about how

they gained knowledge about the facts of the crime, but he does not allege facts to support his claim. Moreover, counsel extensively cross-examined the witnesses, including Haywood and Kennedy. His conclusory claim does not show that he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

**H.      Allocution**

Petitioner alleges that counsel did not protect his right of allocution, but he does not allege any facts to support his claim, so his conclusory claim does not show that he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

**I.      DNA Testing**

Petitioner claims that counsel did not have any DNA testing done. He does not allege facts to support his claim, and he does not show what the results of DNA testing would have been. His conclusory claim does not show that he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

**VI.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

Petitioner also contends that appellate counsel was ineffective. (*Id*. at 10.)

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*,

466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner does not allege any facts to support this claim or identify any issue that counsel should have raised on appeal. His conclusory claim does not show that he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3.

## VII. SEARCH AND SEIZURE

Petitioner contends the trial court erred in denying his motion to suppress evidence based on an illegal search and seizure.

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). If a state has a process that allows an opportunity for full and fair litigation of Fourth Amendment claims, federal habeas review of those claims is barred, even if a defendant did not use the state process to litigate the claims. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). The State of Texas does have a process that allows defendants to litigate Fourth Amendment claims at the trial level and on direct appeal. *Register*, 681 F.3d at 628. Petitioner raised his Fourth Amendment claim in his motion to suppress and on appeal. *See Nkanga*, 2008 WL 367650 at 2.

16

Consequently, his Fourth Amendment claim is barred from federal review.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO ORDERED** this 27th day of February, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE